UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**TRAVIS DICKERSON,**

    Plaintiff,

  v.                                      Case No. 18-CV-1886

**ALLISON GERSY,**

    Defendant.

---

### REPORT AND RECOMMENDATION ON MOTIONS FOR SUMMARY JUDGMENT

---

    Travis Dickerson is a Wisconsin state prisoner representing himself in this lawsuit. On December 21, 2018, I screened the complaint and allowed Dickerson to proceed on a claim that defendant Allison Gersy, his parole agent, had him falsely arrested and imprisoned in violation of the Fourth Amendment. (Docket # 4 at 4.) On January 14, 2019, the case was reassigned to U.S. District Judge Lynn Adelman because not all parties consented to magistrate judge jurisdiction. Although this case is assigned to Judge Adelman, on February 1, 2019, Judge Adelman referred the case to this court to handle pretrial proceedings. (Docket # 9.) Both Dickerson and Gersy have filed motions for summary judgment. For the reasons explained below, I recommend that Dickerson's motion be denied and that Gersy's motion be granted.

### BACKGROUND

    Dickerson filed two motions for summary judgment (Docket ## 10, 19) and Gersy filed a motion for summary judgment (Docket # 28). On August 28, 2019, Judge Adelman denied as moot Dickerson's first motion for summary judgment. (Docket # 33.) In that

order, Judge Adelman stated that he would consider the brief and declaration Dickerson filed in support of his first motion for summary judgment, along with the brief and proposed findings of fact he submitted in support of his second motion for summary judgment, when the court addressed Dickerson's second summary judgment motion and Gersy's summary judgment motion. (*Id.*) I will therefore consider these materials.

On September 18, 2019, I ordered Dickerson to file a response to Gersy's motion for summary judgment and warned that this case might be dismissed for lack of diligence if he failed to do so. (Docket # 34.) Dickerson did not file a response to Gersy's motion. But on the same day I issued the order directing him to respond, Dickerson filed a letter along with several exhibits related to his claim. (Docket # 35.) Based on this filing, I cannot conclude that Dickerson has shown a lack of diligence in litigating this case. I will therefore resolve the summary judgment motions on the merits.

## FACTS[1]

Defendant Allison Gersy has been employed as a probation and parole agent with the State of Wisconsin since December 5, 2015. (Def.'s Proposed Findings of Fact ("DPFOF") ¶ 1, Docket # 30.) Dickerson is an inmate at the Milwaukee Secure Detention Facility (MSDF). (DPFOF ¶ 3.) Gersy has served as Dickerson's parole agent from September 20, 2016 until the present. (DPFOF ¶ 4.) Prior to Gersy, Heather Damask (formerly Heather Sikorski) served as Dickerson's parole agent. (DPFOF ¶ 5.)

---

[1] All uncontroverted statements of material fact are admitted for the purpose of deciding summary judgment. Civ. L.R. 56(b)(4) (E.D. Wis.). Although Gersy's motion for summary judgment advised Dickerson of Civ. L.R. 56 (Docket # 28), Dickerson did not respond to Gersy's Proposed Findings of Fact. Dickerson submitted Proposed Findings of Fact (Docket # 21) but his facts do not cite to the record.

*1. Dickerson's 1996 Conviction*

On April 17, 1996 Dickerson was convicted of three felonies related to the violent assault of a female victim: (1) Count 1: False Imprisonment; (2) Count 2: Substantial Battery; and (3) Count 3: Second Degree Recklessly Endangering Safety in Milwaukee County Case No. 1996CF960123. (DPFOF ¶ 6.) As a result of his convictions, Dickerson received the following sentences: (1) Count 1: five years of probation; (2) Count 2: eight-year parole release sentence; and (3) Count 3: five years of probation.[2] (DPFOF ¶ 7.) He also received the following stayed sentences in Counts 1 and 3: (1) Count 1: five years initial confinement, consecutive to Count 2; and (2) Count 3: five years initial confinement, consecutive to Count 1. (ECF No. 31-1 at 1.)

Dickerson started his prison term for Count 2 around January 1, 1996 because he was given about five months of custody credit. (DPFOF ¶ 9.) On May 1, 2001, Dickerson was released on parole for Count 2 after having spent roughly five years, four months in prison. (DPFOF ¶ 10.) After several community correction holds, Dickerson was discharged on Count 2 on September 6, 2005. (DPFOF ¶ 11.)

---

[2] Gersy states that Dickerson's probation for Counts 1 and 3 were to run consecutively to Count 2, meaning Dickerson would first serve the eight-year prison sentence for Count 2, followed by a total of ten years on supervision on Counts 1 and 3. (DPFOF ¶ 8.) However, a review of the Judgment of Conviction shows that Count 3's five-year probation sentence was to run concurrent with Count 1. (Docket # 31-1 at 1.) This means that after Dickerson was discharged on his eight-year prison sentence on Count 2, he would serve five years total of probation for Counts 1 and 3. However, for Counts 1 and 3 the court also imposed and stayed five years "initial confinement" for Counts 1 and 3. (*Id.*) For these stayed sentences, Count 3 was to run consecutive to Count 1. (*Id.*) Gersy's mistaken description of the probation sentences for Counts 1 and 3 as consecutive does not have an impact on rest of her analysis of Dickerson's sentence because, as described *infra.*, after Count 2 was discharged and Dickerson began to serve his probation for Counts 1 and 3, the probation was revoked before he had completed the five-year sentence, which meant that the consecutive five-year initial confinement stayed sentences for Counts 1 and 3 were invoked.

Upon the discharge of Count 2 on September 6, 2005, Dickerson's probation for Counts 1 and 3 began to run.[3] (DPFOF ¶ 12.) On June 6, 2008 Dickerson was arrested for violating his rules of supervision; specifically, Dickerson fraudulently altered documents at the bank in order to cash checks. (DPFOF ¶ 13.) On August 22, 2008, Dickerson's probation was revoked on Counts 1 and 3 for violating the conditions and rules of his supervision, and Dickerson was reincarcerated. (DPFOF ¶ 14.) Dickerson did not successfully complete his probation for Count 1 or 3 prior to his probation being revoked on August 22, 2008 and he received no credit towards his probation sentence for the "street time" between September 6, 2005 (when his 10-year sentence began) and June 6, 2008 (when he was arrested for violating the terms of his probation). (DPFOF ¶ 15.)

Between September 6, 2005 August 22, 2008, Dickerson spent roughly forty days in custody under various community corrections holds, and he was awarded credit for those forty days in custody. (DPFOF ¶ 16.) On June 6, 2008, the clock reset, and Dickerson had ten years, minus forty days, of imprisonment and supervision to serve on Counts 1 and 3, placing his anticipated discharge date for Counts 1 and 3 at April 26, 2018. (DPFOF ¶ 16.)

2. *Release on Probation in 2014*

On December 23, 2014, Dickerson was granted parole for his reincarceration on Counts 1 and 3. (DPFOF ¶ 18.) At that time, he had three years, four months, and three days (for a total of forty months and three days) of probation left to serve on Counts 1 and 3. (DPFOF ¶ 19.) Because the parole on the Counts 1 and 3 were to run consecutively,

---

[3]Again, Gersy describes this probation as a ten-year probation sentence for Counts 1 and 3, but that is incorrect because Dickerson was sentenced to five years probation in each Count, and Count 3 was to run concurrent to Count 1.

4

Dickerson had roughly twenty months of parole on Count 1 followed by the remainder on Count 3. (DPFOF ¶ 20.)

On January 20, 2015, Dickerson met with his agent and reviewed and signed a Rules of Supervision form. (DPFOF ¶ 21.) The Rules of Supervision laid out several rules that Dickerson had to follow as part of his parole, including:

- Rule 1: Avoid conduct that violates the law;
- Rule 9: Obtain approval and a travel permit from parole officer before leaving the state;
- Rule 16: Provide true, accurate, and complete information in response to inquiries from DOC staff; and
- Rule 17: Report for scheduled appointments.

(DPFOF ¶ 22.)

On August 26, 2016, Count 1 discharged because Dickerson had served half of his parole time (twenty months). (DPFOF ¶ 23.) He still had slightly over half of his parole left to serve on Count 3 (one year, eight months, and three days). (DPFOF ¶ 24.)

*3. Dickerson's Violations of Rules of Supervision*

On August 18, 2016, Dickerson asked Agent Damask for a travel permit to visit his family in Tennessee from September 3 to September 10, 2016. (DPFOF ¶ 25.) Agent Damask granted the request but required that Dickerson make an office visit to see her on August 31, 2016, before his trip. (DPFOF ¶ 26.)

On August 30, 2016, Milwaukee Detective Sarah Blomme alerted Agent Damask that Dickerson was involved in several felony investigations. (DPFOF ¶ 27.) Dickerson's involvement in a felony investigation violated Rule 1 of the Rules of Supervision requiring that he avoid conduct that violate the law. (DPFOF ¶ 28.) That day, Agent Damask issued an apprehension request for Dickerson. (DPFOF ¶ 29.) Gersy did not issue the

5

apprehension request for Dickerson on August 30, 2016 because she was not yet Dickerson's assigned agent. (DPFOF ¶ 30.)

Dickerson did not show up for his scheduled office visit with Agent Demask on August 31, 2016, in violation of Rule 17 of the Rules of Supervision. (DPFOF ¶ 31.) On September 9, 2016, the Milwaukee County District Attorney's Office filed a criminal complaint against Dickerson. (DPFOF ¶ 32.) According to the criminal complaint, Dickerson severely beat and injured two women. (DPFOF ¶ 32.) Dickerson did not have any contact with Agent Damask or Gersy from August 16, 2016 (when he met with Agent Damask to ask for permission to travel to Tennessee) until October 16, 2018 (the date he was arrested). (DPFOF ¶ 33.)

   4. *Dickerson's Arrest*

On October 16, 2018, Dickerson was arrested in Illinois. (DPFOF ¶ 34.) During his arrest he was cited for resisting arrest and obstructing law enforcement officers. (*Id.*) Dickerson was then transported to Wisconsin. (*Id.*) On October 30, 2018, Gersy met with Dickerson and prepared a statement on his behalf. (DPFOF ¶ 35.) Dickerson's signed statement admits that he last reported to his parole agent on August 18, 2016 and that he had stayed in Tennessee for most of the two years he had absconded. (DPFOF ¶ 36.)

Because Dickerson had absconded, the time remaining on his parole for Count 3 was tolled. (DPFOF ¶ 37.) As of the date of his absconding (August 30 or 31, 2016), Dickerson had one year, eight months, and three days of parole left to serve on Count 3. (*Id.*) Therefore, when Dickerson was arrested on October 16, 2018, he still had one year, eight months, and three days of parole left to serve on Count 3. (*Id.*)

On November 29, 2018 Gersy reviewed Dickerson's case for revocation and prepared a Revocation Summary with her supervisor. (DPFOF ¶ 38.) The Revocation Summary listed the following six violations for Dickerson:

1. Causing substantial bodily harm to victim (in violation of Rule 1);
2. Causing substantial bodily harm to victim (in violation of Rule 1);
3. Absconding from community supervision (in violation of Rule 17);
4. Leaving the state without a travel permit and permission (in violation of Rule 9);
5. Resisting arrest (in violation of Rule 1); and
6. Obstructing law enforcement officers (in violation of Rules 1 and 16).

(DPFOF ¶ 39.) Based on Dickerson's threat to the public, his treatment needs, and his flight risk, the recommendation to the Administrative Law Judge was to revoke his supervision. (DPFOF ¶ 40.)

Around October 31, 2018, Gersy submitted a Revocation Information Request to Corrections requesting a summary of how much time Dickerson had left on his parole. (DPFOF ¶ 41.) Corrections responded, informing Gersy that Dickerson had one year, eight months, and three days left on his probation as of the date of his arrest on October 16, 2016. (Id.; Gersy Decl. ¶ 34.) Gersy recommended in the Revocation Summary that Dickerson be reincarcerated for one year, eight months, and three days. (DPFOF ¶ 42; Gersy Decl. ¶ 34.)

5. *Parole Revocation hearing*

On December 19, 2018 a parole revocation hearing was held for Dickerson. (DPFOF ¶ 43.) Dickerson appeared in person and represented himself; Gersy also appeared. (DPFOF ¶ 44.)

On December 20, 2018, Administrative Law Judge Vince Varone issued a Decision that ordered Dickerson's parole be revoked and that he be reincarcerated for the remainder of the probation on Count 3 - one year, eight months, and three days. (DPFOF ¶ 45.) In the

Decision, the ALJ notes that Dickerson raised concerns at the hearing that he had not been properly credited for his time on parole. (DPFOF ¶ 46.) The ALJ explained why Dickerson was still subject to the DOC's jurisdiction when he was arrested on October 16, 2018. (DPFOF ¶ 47.) The Decision also explains in extensive detail that Dickerson did not receive credit towards his parole for the time that he absconded. (DPFOF ¶ 48.)

**LEGAL STANDARD**

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477

U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Dickerson contends that his October 16, 2018 arrest was unlawful and that Gersy had him arrested for an "illegal and unlawful VOP hold" because his criminal case (1996-CF-0123) was closed. (Docket # 20 at 1.) Dickerson contends that this arrest came six months after he was finally discharged from that criminal conviction. (*Id.* at 4.) He says he "maximum discharged" on August 26, 2016 and on April 26, 2018. (*Id.* at 6.) According to Dickerson, to take his parole street time credit and reincarcerate him subjected him to a "life sentence" and unwarranted punishment. (Docket # 11 at 6.)

In response, Gersy points out that Dickerson admits that he absconded from parole from August 2016 until his arrest on October 16, 2018 and under Wisconsin law, a parolee receives no credit for time that he absconds from parole. (Docket # 29 at 2.) Gersy states that Dickerson's discharge date tolled, he was still on parole at the time of his arrest and, as such, he was not falsely arrested or imprisoned. (*Id.*) Gersy also contends that rule set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994), prohibits Dickerson from maintaining a § 1983 claim. (Docket # 29 at 11-13.) Gersy also contends that she did not violate Dickerson's Fourth Amendment rights because she did not issue the apprehension request and that, nonetheless, the apprehension request was based on reasonable suspicion that Dickerson

9

violated the rules of parole.[4] (*Id.* at 13-16.) Lastly, Gersy contends that she is entitled to qualified immunity. (*Id.* at 19-21.)

Dickerson's claims are based on his belief that he had been discharged from his sentence in Case No. 1996CF960123 when he was arrested in Illinois on October 16, 2018. However, the undisputed facts show that Dickerson was still on parole when Agent Damask issued the apprehension request on August 30, 2016. Dickerson absconded from August 30, 2016 until his arrest on October 16, 2018. He did not receive credit for the time that he absconded, *see* Wis. Stat. § 304.072(1), so when Dickerson was arrested on October 16, 2018, he still had one year, eight months and three days of parole to serve on Count 3. Simply put, Dickerson's claims fail because he still had time to serve on this sentence on Count 3 when he was arrested.

In addition, the apprehension request was issued by Dickerson's former agent, Agent Damask, not by Gersy. Thus, Gersy arguably lacked personal involvement in Dickerson's arrest. *See Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) (defendant must be personally responsible for the alleged deprivation of constitutional rights to be liable). Even if Gersy had issued the apprehension request, Dickerson was arrested based on reasonable suspicion that he violated the terms of his Rules of Supervision. *See Knox v. Smith*, 342 F.3d 651, 657 (7th Cir. 2007) (seizure of parolee requires something less than probable cause, i.e., reasonable suspicion, to be reasonable under the Fourth Amendment). Agent Damask issued the apprehension request based on notification from a Milwaukee detective that Dickerson was involved in a felony investigation. Dickerson subsequently did not show up for his office visit with Agent Damask and a criminal complaint was filed against him.

---

[4] Gersy also argues that she did not violate Dickerson's Eighth Amendment rights. Dickerson is not proceeding on a claim under the Eighth Amendment, so I will not address this argument.

Based on these factors, Gersy is entitled to summary judgment on Dickerson's Fourth Amendment false arrest claim.

Moreover, Dickerson's false imprisonment claim is barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* holds that "a civil rights suit cannot be maintained by a prisoner if a judgment in his favor would 'necessarily imply' that his conviction had been invalid[.]" *Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011) (citing *Heck*, 512 U.S. at 487). In other words, "a plaintiff may not pursue a suit for damages under § 1983 that would undermine the validity of a conviction unless he demonstrates that the conviction 'has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" *Hadley v. Quinn*, 524 F. App'x 290, 293 (7th Cir. 2013) (quoting *Heck*, 512 U.S. at 487). *Heck* applies to revocation convictions. *Knowlin v. Thompson*, 207 F.3d 907, 909 (7th Cir. 2000); *Antonelli v. Foster*, 104 F.3d 899, 901 (7th Cir. 1997). Judgment in Dickerson's favor on his false imprisonment claim would necessarily imply the invalidity of his probation revocation. Thus, Gersy is entitled to summary on that claim.

## ORDER

**NOW, THEREFORE, IT IS RECOMMENDED** that Dickerson's motion for summary judgment (Docket #19) is **DENIED**.

**IT IS FURTHER RECOMMENDED** that Gersy's motion for summary judgment (Docket #28) is **GRANTED**.

Dickerson's attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b)(2), which allow Dickerson to file written objections to my recommendation within

fourteen days of service of the recommendation. Dickerson's failure to timely file objections with the district court shall result in a waiver of his right to appeal.

Dated at Milwaukee, Wisconsin this 9th day of January, 2020.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge